UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON GRAND JURY 2016-2
NOVEMBER 1, 2018 SESSION



FILED

NOV - 1 2018

RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

UNITED STATES OF AMERICA

v.

JAMES H. BLUME, JR., D.O.
MARK T. RADCLIFFE
JOSHUA RADCLIFFE
MICHAEL T. MORAN, M.D.
SANJAY MEHTA, D.O
BRIAN GULLETT, D.O.
VERNON STANLEY, M.D.
MARK CLARKSON, D.O.
WILLIAM EARLEY, D.O.
PAUL W. BURKE, JR., M.D.,
ROSWELL TEMPEST LOWRY, M.D.

CRIMINAL NO.    5:18-cr-00026

21 U.S.C. § 846
21 U.S.C. § 856(a)(2)
18 U.S.C. § 924(o)
21 U.S.C. § 841(a)(1)
21 U.S.C. § 841(b)(1)(C)
18 U.S.C. § 1956(h)
18 U.S.C. § 2

# T H I R D
## S U P E R S E D I N G
### I N D I C T M E N T

### COUNT ONE
### (Conspiracy to Distribute Oxycodone)

The Grand Jury Charges:

1.    From in or about November 2010, and continuing through on or about June 11, 2015, in the Southern District of West Virginia and elsewhere, the defendants JAMES H. BLUME, JR., D.O., MARK T. RADCLIFFE, JOSHUA RADCLIFFE, MICHAEL T. MORAN, M.D., SANJAY MEHTA, D.O., BRIAN GULLETT, D.O., VERNON STANLEY, M.D., MARK CLARKSON, D.O., WILLIAM EARLEY, D.O., PAUL W. BURKE, JR., M.D., and ROSWELL TEMPEST LOWRY, M.D., along with others known and

unknown to the Grand Jury, did knowingly conspire with each other to commit offenses in violation of 21 U.S.C. § 841(a)(1), that is, knowingly and intentionally to distribute Schedule II controlled substances, including a mixture and substance containing a detectable amount of oxycodone, not for a legitimate medical purpose in the usual course of professional medical practice and beyond the bounds of medical practice.

## BACKGROUND

2.   Beginning in or about November 2010, through on or about June 11, 2015, defendant JAMES H. BLUME, JR., D.O., owned Hitech Opioid Pharmacovigilance Expertise Clinic, PLLC ("HOPE Clinic"), a purported pain management clinic with locations in the Southern District of West Virginia and elsewhere. In reality, HOPE Clinic operated in a manner that encouraged its practitioners, either individually or together, to prescribe large amounts of controlled substances over a period of time to a significant number of its "patients" without a legitimate medical purpose in the usual course of professional medical practice and beyond the bounds of medical practice in exchange for fees typically paid in cash.

3.   On or about September 22, 2010, defendant JAMES H. BLUME, JR., D.O., entered into a "Physician Practice Management Agreement" with defendant MARK T. RADCLIFFE. Essentially, under the terms of the agreement, defendants JAMES H. BLUME, JR., D.O., and MARK T. RADCLIFFE agreed that defendant JAMES H. BLUME, JR.,

D.O., would contract physicians for HOPE Clinic and defendant MARK T. RADCLIFFE would serve as the practice manager of HOPE Clinic. Defendant MARK T. RADCLIFFE's responsibilities under the terms of the agreement included forming a limited liability company to run the day-to-day operations of HOPE Clinic, hiring and supervising non-medical employees, and often approving and directing financial transactions on behalf of HOPE Clinic.

4.    Defendant MARK T. RADCLIFFE owned and operated Patients, Physicians, and Pharmacists Fighting Diversion, Inc. ("PPPFD"), which acted as the practice management company for HOPE Clinic. PPPFD's purported mission was to "protect pain care against the diversion of prescription narcotic pain medicine and help law abiding patients."

5.    At all times relevant to this Third Superseding Indictment, PPPFD operated out of the same locations as HOPE Clinic. Part of the purported mission of PPPFD was to protect pain management clinics by using "narcotics auditors." Narcotics auditors allegedly were professionals trained to protect "from the dangers of drug abuse and diversion by screening out high-risk patients that are prone to abuse and trafficking of their narcotics medication." Defendant MARK T. RADCLIFFE and PPPFD typically hired former law enforcement officers as narcotics auditors.

6.    Narcotics auditors were tasked with performing "audits" on new and returning customers of HOPE Clinic. An audit was

3

generally supposed to consist of a narcotics auditor meeting with a customer and completing an interview about the customer's pain level and pain location, completing a PPPFD Compliance Audit Report and Established Patient Monthly Questionnaire, a review of the customer's past prescriptions, and at times, a drug screen. During the audit, the narcotics auditors were also supposed to take the customer's vital signs including blood pressure, weight, and pulse.

    7.    During the course of the conspiracy, defendants JAMES H. BLUME, JR., D.O., and MARK T. RADCLIFFE opened the following HOPE Clinic locations:

| Location | Approximate Dates | Address |
|---|---|---|
| Beckley | November 2010 – July 2013 | 404 Carriage Drive Beckley Raleigh County, WV |
| Charleston | December 2011 – February 26, 2015 | 4407 MacCorkle Ave Charleston Kanawha County, WV |
| Wytheville | November 2012 – June 2015 | 340 Peppers Ferry Road, Suite B Wytheville Wythe County, VA |
| Beaver | July 2013 – June 11, 2015 | 106 Lockheed Drive Beaver Raleigh County, WV |

    8.    Defendants JAMES H. BLUME, JR., D.O., and MARK T. RADCLIFFE also owned, operated, and/or were affiliated with HOPE Clinic locations in Whitehall, West Virginia; Fishersville and Mechanicsville, Virginia; and Murfreesboro, Tennessee, during various times between November 2010 and June 2015.

9.    Defendant MARK T. RADCLIFFE's son, defendant JOSHUA RADCLIFFE, initially began employment through PPPFD at the Beckley HOPE Clinic as a receptionist and narcotics auditor in October 2010, then was promoted to Clinic Manager. Defendant MARK T. RADCLIFFE eventually promoted defendant JOSHUA RADCLIFFE to the Director of Human Resources and the Supervisor of the Beckley HOPE Clinic Manager.

10.    At all times relevant to this Third Superseding Indictment, defendants MARK T. RADCLIFFE and JOSHUA RADCLIFFE were not licensed medical professionals and had no known formal medical education or qualifications in the State of West Virginia or elsewhere.

11.    The following defendants were licensed physicians who worked at HOPE Clinic and were authorized to prescribe controlled substances for legitimate medical purposes in the usual course of professional medical practice and within the bounds of medical practice:

| DEFENDANT | LICENSING STATE | PRIMARY HOPE CLINIC LOCATIONS | APPROXIMATE DATES AT HOPE CLINIC |
|---|---|---|---|
| MICHAEL T. MORAN | WV | BECKLEY AND CHARLESTON | AUGUST 2012 – AUGUST 2013 |
| SANJAY R. MEHTA | WV | BECKLEY AND BEAVER | NOVEMBER 2012 – JUNE 2015 |
| BRIAN C. GULLETT | WV | CHARLESTON | DECEMBER 2012 – MAY 2014 |
| VERNON STANLEY | WV | CHARLESTON | APRIL 2012 – APRIL 2014 |
| MARK CLARKSON | VA | WYTHEVILLE | SEPTEMBER 2013 – JUNE 2015 |

5

| WILLIAM EARLEY | WV | CHARLESTON | OCTOBER 2013 – DECEMBER 2014 |
| PAUL BURKE | WV | CHARLESTON | APRIL 2014 – SEPTEMBER 2014 |

12.   Defendant ROSWELL TEMPEST LOWRY, M.D., who was at times a licensed physician, worked at the Charleston HOPE Clinic location from on or about May 20, 2014 through on or about August 19, 2014.

13.   Defendant JAMES H. BLUME Jr., D.O., at times worked at the BECKLEY HOPE Clinic location and was authorized to prescribe controlled substances for legitimate medical purposes in the usual course of professional medical practice and within the bounds of medical practice.

### *CONTROLLED SUBSTANCES – GENERAL ALLEGATIONS AND TERMINOLOGY*

14.   The Controlled Substances Act ("the Act") governs the manufacture, distribution, and dispensing of controlled substances in the United States. The Act and the Code of Federal Regulations contain definitions relevant to this Third Superseding Indictment, some of which are set forth below.

15.   The term "controlled substance" means a drug or other substance, or immediate precursor, included in Schedule I, II, III, IV or V as designated by 21 U.S.C. § 802(6) and the Code of Federal Regulations.

16.   The term "Schedule II" means the drug or other substance has a high potential for abuse, has a currently accepted medical use with severe restrictions, and abuse of the drug or other

6

substances may lead to severe psychological and/or physical dependence.

17. The term "practitioner" means a medical doctor, physician, or other individual licensed, registered, or otherwise permitted, by the United States or the jurisdiction in which he or she practices, to dispense controlled substances in the course of professional practice.

18. The Drug Enforcement Administration issues registration numbers to qualifying practitioners, who are then authorized to prescribe and dispense Schedule II, III, IV, and V controlled substances.

19. To be issued and maintain a DEA registration number, a physician or non-physician must comply with all state laws regarding the practice of medicine and the prescribing of medication where that individual is practicing.

20. A practitioner violates the Controlled Substances Act and the relevant Code of Federal Regulation if he or she issues a prescription for controlled substances not for legitimate medical purposes in the usual course of professional medical practice and not within the bounds of medical practice.

21. The West Virginia Board of Pharmacy maintains the West Virginia Prescription Monitoring Program ("WVPMP") by centrally collecting data regarding the prescribing and filling of Schedule II, III, and IV controlled substances. One purpose of the WVPMP is

to deter the illegitimate use of prescription controlled substances. A similar system is maintained in Virginia, which is known as the Virginia Prescription Monitoring Program ("VAPMP"); in Kentucky, which is known as the Kentucky All Schedule Prescription Electronic Reporting ("KASPER"); and in Ohio, which is known as the Ohio Automated RX Reporting System ("OARRS"). An individual report generated by these systems is typically referred to as a Prescription Monitoring Profile.

22.   The term "doctor shopping" refers to the practice of a patient visiting multiple practitioners to obtain multiple prescriptions for controlled substances.

23.   Oxycodone is a narcotic, opioid analgesic classified as a Schedule II controlled substance. It is sold in generic form and under brand names including OxyContin, Percocet, Roxicodone, Roxicet, and Endocet. When legally prescribed for a legitimate medical purpose, oxycodone is used to treat moderate to severe pain. However, even if prescribed for a legitimate medical purpose and even if taken in the prescribed amounts, oxycodone can cause physical and/or psychological dependence.

24.   Oxycodone and other Schedule II drugs have a high potential for abuse and can be crushed and snorted, or dissolved and injected to get an immediate high. This abuse could lead to addiction, overdose, and, in some cases, death. At all times relevant to this Third Superseding Indictment, demand for

oxycodone grew to epidemic proportions in many parts of the United States, including Southern West Virginia, Western Virginia, and Eastern Kentucky, where individuals illegally sold pills containing oxycodone for $1 or more per milligram.

### *MANNER AND MEANS OF THE CONSPIRACY*

It was part of the conspiracy that:

25. Defendants JAMES H. BLUME, JR., D.O., and MARK T. RADCLIFFE operated HOPE Clinic as a cash-based business that employed practitioners who prescribed oxycodone and other Schedule II controlled substances including but not limited to morphine, oxymorphone, methadone, and fentanyl. Defendants JAMES H. BLUME, JR., D.O., and MARK T. RADCLIFFE devised a scheme under which HOPE Clinic did not bill customers' insurance companies, did not require a physician referral or substantive medical records from its customers, and discouraged practitioners from referring customers for other type of pain-relieving therapies such as physical therapy, massage therapy, or interventional pain management procedures. Practitioners collectively and individually prescribed numerous Schedule II prescriptions that were not for legitimate medical purposes in the usual course of professional medical practice and not within the bounds of medical practice. Even though defendants JAMES H. BLUME, JR., D.O., and MARK T. RADCLIFFE held out HOPE Clinic as specializing in the "treatment of chronic pain," they knowingly contracted the services of medical professionals

9

with no background or specialized training in pain management, including defendants MICHAEL T. MORAN, M.D., SANJAY MEHTA, D.O., BRIAN GULLETT, D.O., VERNON STANLEY, M.D., MARK CLARKSON, D.O., WILLIAM EARLEY, D.O., PAUL W. BURKE, JR., M.D., and ROSWELL TEMPEST LOWRY, M.D.

26. Defendants MICHAEL T. MORAN, M.D., SANJAY MEHTA, D.O., BRIAN GULLETT, D.O., VERNON STANLEY, M.D., MARK CLARKSON, D.O., WILLIAM EARLEY, D.O., PAUL W. BURKE, JR., M.D., and ROSWELL TEMPEST LOWRY, M.D., participated in and furthered defendants JAMES H. BLUME, JR., D.O., and MARK T. RADCLIFFE's scheme of operating HOPE Clinic not for a legitimate medical purpose in the usual course of professional practice and beyond the bounds of medical practice in the following non-exhaustive ways:

> a. Frequently prescribed oxycodone and other Schedule II controlled substances to customers without documenting a reasonable pain history to support treatment with opioids;
>
> b. Provided large amounts of Schedule II prescription medications to customers who they knew to be and had reasonable cause to believe, were drug addicts, including to customers whom the practitioner did not examine in person before issuing a prescription for a controlled substance;
>
> c. Prescribed oxycodone and other Schedule II controlled substances to customers who admitted buying or receiving controlled substances illegally;
>
> d. Prescribed oxycodone and other Schedule II controlled substances to customers who failed drug screens through use of illicit controlled

substances, non-prescribed controlled substances, or non-use of prescribed controlled substances; and

e.   Prescribed oxycodone and other Schedule II controlled substances to customers even though the customers' Prescription Monitoring Profiles showed evidence of doctor shopping or without obtaining the customers' Prescription Monitoring Profile.

27. Although HOPE Clinic provided customers with prescriptions for highly-addictive controlled substances, such as oxycodone and other opiate medications such as morphine, oxymorphone, methadone, and fentanyl, practitioners, including defendants MICHAEL T. MORAN, M.D., SANJAY MEHTA, D.O., BRIAN GULLETT, D.O., VERNON STANLEY, M.D., MARK CLARKSON, D.O., WILLIAM EARLEY, D.O., PAUL W. BURKE, JR., M.D., and ROSWELL TEMPEST LOWRY, M.D., routinely:

a.   Failed to conduct sufficient dialogue with the customers regarding treatment options and the risks and benefits of treatment with opiates and refrained from prescribing alternative treatments, including physical therapy, massage therapy, and interventional pain management procedures;

b.   Conducted cursory, incomplete, inadequate, or no medical examination of customers;

c.   Failed to adjust pain therapy to the individual medical needs of the customers (if needs existed); and

d.   Failed to counsel customers as to the proper usage and risks associated with the inappropriate combinations of medications.

11

28.   Defendant MARK T. RADCLIFFE, HOPE Clinic, and PPPFD devised a punitive system to continue to provide customers who failed drug screens with prescriptions for Schedule II controlled substances, including oxycodone, which in effect benefited all the defendants, HOPE Clinic, and PPPFD because it kept customers and their money. Even after a failed drug screen, customers continued to get their prescriptions, they continued to pay their monthly fees, but would at times receive a lower dosage or less pills. Thus, the system punished customers for failing a drug screen while still giving customers access to highly addictive opioid pain medicine and retaining them as customers. At the direction of defendant MARK T. RADCLIFFE, PPPFD employees, on behalf of HOPE Clinic, issued customers drug test inconsistency notification documents including, at times, 1st, 2nd, 3rd, 4th, 5th, and final notifications. The notifications informed customers that the practitioner may reduce the customers' medications because of failed drug screens. Following this direction, HOPE Clinic practitioners, including but not limited to, defendants SANJAY MEHTA, D.O., BRIAN GULLETT, D.O., VERNON STANLEY, M.D., MARK CLARKSON, D.O., WILLIAM EARLEY, D.O., PAUL W. BURKE, JR., M.D., and ROSWELL TEMPEST LOWRY, M.D., at times reduced customers' prescriptions by twenty-five percent for a period of three months following the third failed drug screen, and after three months

without an abnormal drug screen, returned customers to the initial level.

29.   At times during the conspiracy, PPPFD employees, under the supervision of defendants MARK T. RADCLIFFE and JOSHUA RADCLIFFE, transferred customers who had been denied controlled substance prescriptions by a practitioner at one HOPE Clinic location to a practitioner at another HOPE Clinic location to ensure the customer received a prescription for a controlled substance and continued paying HOPE Clinic and PPPFD fees.

30.   The Beckley, Beaver, Charleston, and Wytheville HOPE Clinics had large numbers of customer visits per day with typically only one practitioner working at each location. Some HOPE Clinic locations, including Beaver and Charleston, averaged sixty-five or more customers a day during a ten-hour workday with only one practitioner working, and, on some days, had over one hundred customers per day per practitioner.

31.   During the course of the conspiracy, pharmacies began to refuse to fill prescriptions from HOPE Clinic practitioners. Defendant MARK T. RADCLIFFE created a pharmacy liaison program within PPPFD to facilitate customers' ability to fill their prescriptions for Schedule II controlled substances distributed by HOPE Clinic practitioners. The pharmacy liaison program solicited pharmacies to fill prescriptions issued by HOPE Clinic practitioners including defendants MICHAEL T. MORAN, M.D., SANJAY

13

MEHTA, D.O., BRIAN GULLETT, D.O., VERNON STANLEY, M.D., MARK CLARKSON, D.O., WILLIAM EARLEY, D.O., PAUL W. BURKE, JR., M.D., and ROSWELL TEMPEST LOWRY, M.D. PPPFD employees, under the supervision of defendant MARK T. RADCLIFFE, then directed customers to pharmacies willing to fill HOPE Clinic prescriptions.

32.  In order to meet the demands of HOPE Clinic customers' prescriptions, defendant MARK T. RADCLIFFE and PPPFD employees, both known and unknown to the Grand Jury, solicited compounding pharmacies in West Virginia and Kentucky to compound oxycodone and other Schedule II controlled substances for its customers. A compounding pharmacy is a pharmacy licensed to make drugs prescribed by a practitioner for a specific patient with needs that cannot be met by commercially available drugs. Defendant MARK T. RADCLIFFE and PPPFD employees then directed HOPE Clinic practitioners including defendants SANJAY MEHTA, D.O., BRIAN GULLETT, D.O., VERNON STANLEY, M.D., MARK CLARKSON, D.O., WILLIAM EARLEY, D.O., PAUL W. BURKE, JR., M.D., and ROSWELL TEMPEST LOWRY, M.D. to write HOPE Clinic customers prescriptions for compounded oxycodone and other controlled substances including hydrocodone and methadone.

33. Defendant JAMES H. BLUME, JR., D.O., and MARK T. RADCLIFFE did not hire additional medical professionals such as nurses, physician assistants, or other medical professionals

14

because hiring additional medical personal would "cut into the doctor's profit."

34.   HOPE Clinic was set up so that customers saw whichever practitioner was available and, more often than not, multiple practitioners prescribed oxycodone-based pills to the same customer over time. For example:

a. In a one-year period from September 10, 2013, through September 9, 2014, defendants VERNON STANLEY, M.D., BRIAN GULLETT, D.O., WILLIAM EARLEY, D.O., ROSWELL TEMPEST LOWRY, M.D., and PAUL W. BURKE, JR., M.D., prescribed approximately 2,130 oxycodone-based pills to customer P.H, that is, an average of over five pills per day;

b. From February 25, 2013, through January 30, 2014,defendants SANJAY MEHTA, D.O. and MICHAEL T. MORAN, M.D., prescribed approximately 1,425 oxycodone-based pills and 660 morphine-based pills to customer J.L.C, that is, an average of over five pills per day;

c. From November 6, 2012, through November 19, 2013,defendants VERNON STANLEY, M.D., BRIAN GULLETT, D.O., WILLIAM EARLEY, D.O., and MARK CLARKSON, D.O. prescribed approximately 2,640 oxycodone-based pills and 120 morphine-based pills to customer J.G., that is, an average of approximately seven pills per day; and

d. In a one-year period from March 6, 2014 to March 2, 2015, defendant MARK CLARKSON, D.O. and other practitioners known to the Grand Jury, prescribed approximately 1,610 oxycodone-based pills to customer J.M.B., that is, an average of over four pills per day.

### HOPE CLINIC/PPPFD FINANCIAL INFORMATION

35. Defendants JAMES H. BLUME, JR., D.O., and MARK T. RADCLIFFE charged in-state customers at least $275 for an initial appointment and at least $160 for each subsequent visit. Each out-of-state customer paid at least $330 for an initial visit and at least $185 for each subsequent visit.

36. Defendants JAMES H. BLUME, JR., D.O., and MARK T. RADCLIFFE operated HOPE Clinic as a predominately cash business receiving the approximate payments detailed below:

| Year | Total Customer Payments Received From All Clinics | Total Cash Amount Received | Total Credit Card Amount Received | Cash Percentage |
|------|------|------|------|------|
| 2012 | $3,815,157 | $3,540,016 | $275,141 | 93% |
| 2013 | $7,412,582 | $6,577,089 | $835,493 | 89% |
| 2014 | $9,247,015 | $8,239,621 | $1,007,394 | 89% |
| 1/2015 to 6/2015 | $3,375,310 | $2,928,962 | $446,348 | 87% |
| Total | $23,850,064 | $21,285,688 | $2,564,376 | 89% |

37. During the operation of HOPE Clinic, defendant JAMES H. BLUME, JR., D.O., controlled HOPE Clinic bank accounts at First Century Bank ("FCB Account -4625") and Branch Banking & Trust Bank ("BB&T Account -1559"). Defendant MARK T. RADCLIFFE controlled PPPFD bank accounts at First Community Bank ("FCB Account -9268") and Branch Banking & Trust Bank ("BB&T Account -1524"). The cash received from customers of HOPE Clinic was divided and deposited into the HOPE Clinic and PPPFD accounts. Defendant JAMES H. BLUME, JR., D.O., also paid defendant MARK T. RADCLIFFE various monthly amounts for defendant MARK T. RACLIFFE's and PPPFD's services as practice manager of HOPE Clinic. Defendant MARK T. RADCLIFFE deposited these payments from defendant JAMES H. BLUME, JR., D.O., into FCB Account -9268 and BB&T Account -1524.

38. Defendants JAMES H. BLUME, JR., D.O., and MARK T. RADCLIFFE agreed to pay and paid bonuses to practitioners,

17

including defendants MICHAEL T. MORAN, M.D., SANJAY MEHTA, D.O., BRIAN GULLETT, D.O., VERNON STANLEY, M.D., MARK CLARKSON, D.O., WILLIAM EARLEY, D.O., PAUL W. BURKE, JR., M.D., and ROSWELL TEMPEST LOWRY, M.D., based on the profit of HOPE Clinic, which was directly tied to the number of customers who visited each HOPE Clinic daily.

39.  The bonus structure established by defendants JAMES H. BLUME, JR., D.O., and MARK T. RADCLIFFE encouraged and rewarded practitioners, including defendants MICHAEL T. MORAN, M.D., SANJAY MEHTA, D.O., BRIAN GULLETT, D.O., VERNON STANLEY, M.D., MARK CLARKSON, D.O., WILLIAM EARLEY, D.O., PAUL W. BURKE, JR., M.D., and ROSWELL TEMPEST LOWRY, M.D., to prescribe Schedule II prescription pain medications to customers who otherwise showed signs of abuse or diversion, at times in direct contravention of HOPE Clinic and PPPFD policies; to keep customers returning to the HOPE Clinic by prescribing Schedule II controlled substances; and to move as many customers as possible through HOPE Clinic each day without providing legitimate medical care.

40.  From November 2010 through May 4, 2012, defendant JAMES H. BLUME, JR., D.O., typically issued bi-monthly checks containing the practitioners' bonuses and wages from his FCB Account -4625 to a physician staffing company that administered the contracts between HOPE Clinic and the practitioners. The physician staffing company in turn distributed the funds, through checks written on its bank accounts, to the practitioners. Beginning in April 2012

through September of 2014, defendant JAMES H. BLUME, JR., D.O., used his BB&T Account -1559 to issue the bi-monthly checks containing the practitioners' bonuses and wages to the physician staffing company. From October 2014 through the end of the conspiracy, defendant JAMES H. BLUME, JR., D.O., used his BB&T Account -1559 to issue the bi-monthly checks containing the practitioners' bonuses directly to the practitioners.

41.   Defendant MARK T. RADCLIFFE and his company, PPPFD, also paid bonuses to PPPFD employees, including defendant JOSHUA RADCLIFFE, clinic managers, and narcotics auditors. Defendant MARK T. RADCLIFFE based the bonuses, depending on the employee's position, on the number of customers seen by each auditor, the number of paying customers at each HOPE Clinic location, or the total number of audits completed at each clinic. Defendant MARK T. RADCLIFFE's bonus structure encouraged and rewarded PPPFD employees, including defendant JOSHUA RADCLIFFE, clinic managers and narcotics auditors, to increase the number of customer visits, to not discharge customers who were in violation of HOPE Clinic and PPPFD policies, and to move as many customers as possible through HOPE Clinic each day.

In violation of Title 21, United States Code, Section 846.

## COUNT TWO
### (Maintaining a Drug-Involved Premises)

1.    Paragraphs 1 through 41 of Count One are incorporated herein by reference.

2.    Between in or about November 2010, through in or about July 2013, at or near Beckley, Raleigh County, West Virginia, within the Southern District of West Virginia, defendants JAMES H. BLUME, JR., D.O., and MARK T. RADCLIFFE, aided and abetted by each other, did unlawfully and knowingly manage and control office space at 404 Carriage Drive, Beckley, West Virginia, 25801, as owner, lessee, employee, and occupant, and did knowingly and intentionally rent, lease, profit from, and make available for use, with or without compensation, that office space for the purpose of unlawfully distributing, and causing to be distributed, Schedule II controlled substances, including a mixture and substance containing a detectable amount of oxycodone, not for legitimate medical purposes in the usual course of professional medical practice and beyond the bounds of medical practice.

In violation of Title 21, United States Code, Section 856(a)(2) and Title 18, United States Code, Section 2.

## COUNT THREE
### (Maintaining a Drug-Involved Premises)

1.    Paragraphs 1 through 41 of Count One are incorporated herein by reference.

2.    Between in or about December 2011, through on or about February 26, 2015, at or near Charleston, Kanawha County, West Virginia, within the Southern District of West Virginia, defendants JAMES H. BLUME, JR., D.O., and MARK T. RADCLIFFE, aided and abetted by each other, did unlawfully and knowingly manage and control office space at 4407 MacCorkle Ave SE, Charleston, West Virginia 25304, as owner, lessee, employee, and occupant, and did knowingly and intentionally rent, lease, profit from, and make available for use, with or without compensation, the office space for the purpose of unlawfully distributing, and causing to be distributed, Schedule II controlled substances, including a mixture and substance containing a detectable amount of oxycodone, not for legitimate medical purposes in the usual course of professional medical practice and beyond the bounds of medical practice.

In violation of Title 21, United States Code, Section 856(a)(2) and Title 18, United States Code, Section 2.

## COUNT FOUR
### (Maintaining a Drug-Involved Premises)

1.    Paragraphs 1 through 41 of Count One are incorporated herein by reference.

2.    Between in or about July 2013, through in or about June 2015, at or near Beaver, Raleigh County, West Virginia, within the Southern District of West Virginia, defendants JAMES H. BLUME, JR., D.O., MARK T. RADCLIFFE, and JOSHUA RADCLIFFE, aided and abetted by each other, did unlawfully and knowingly manage and control office space at 106 Lockheed Drive, Beaver, Raleigh County, West Virginia 25813, as owner, lessee, employee, occupant, and mortgagee, and did knowingly and intentionally rent, lease, profit from, and make available for use, with or without compensation, that office space for the purpose of unlawfully distributing, and causing to be distributed, Schedule II controlled substances, including a mixture and substance containing a detectable amount of oxycodone, not for legitimate medical purposes in the usual course of professional medical practice and beyond the bounds of medical practice.

In violation of Title 21, United States Code, Section 856(a)(2) and Title 18, United States Code, Section 2.

## COUNT FIVE
### (Conspiracy to Use Firearms in Drug Trafficking Crime)

1.    Paragraphs 1 through 41 of Count One are incorporated herein by reference.

2.    From in or about November 2010, and continuing through on or about June 11, 2015, in the Southern District of West Virginia and elsewhere, the defendants MARK T. RADCLIFFE and JOSHUA RADCLIFFE, knowingly conspired with each other, and with others known and unknown to the Grand Jury, to commit offenses in violation of 18 U.S.C. § 924(c), that is, to use and carry firearms during and in relation to a drug trafficking crime for which they may be prosecuted in a court of the United States, that is, maintaining drug-involved premises in violation of 21 U.S.C. § 856(a)(2).

In violation of Title 18, United States Code, Section 924(o).

## COUNT SIX
### (Distribution of Oxycodone)

On or about July 10, 2013, at or near Beckley, Raleigh County, West Virginia, and within the Southern District of West Virginia, defendant SANJAY MEHTA, D.O., knowingly and intentionally distributed, and caused to be distributed, a quantity of oxycodone, a Schedule II controlled substance, to customer C.R. not for legitimate medical purposes in the usual course of professional medical practice and beyond the bounds of medical practice.

In violation of Title 21, United States Code, Section 841(a)(1).

## COUNTS SEVEN - ELEVEN
### (Distribution of Oxycodone)

On or about each of the dates listed below, at or near Beaver, Raleigh County, West Virginia, in the Southern District of West Virginia, the defendants listed in the chart below knowingly and intentionally distributed, and caused to be distributed, a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance, not for legitimate medical purposes in the usual course of professional medical practice and beyond the bounds of medical practice.

| COUNT | DEFENDANT | CUSTOMER | DATE |
|-------|-----------|----------|------|
| 7 | MICHAEL T. MORAN | J.L.C. | 08/14/2013 |
| 8 | SANJAY MEHTA | J.L.C. | 05/19/2015 |
| 9 | MICHAEL T. MORAN | D.D. | 08/13/2013 |
| 10 | SANJAY MEHTA | D.D. | 02/26/2014 |
| 11 | SANJAY MEHTA | C.T. | 12/05/2013 |

All in violation of Title 21, United States Code, Section 841(a)(1).

## COUNTS TWELVE – THIRTY-THREE
### (Distribution of Oxycodone)

On or about each of the dates listed below, at or near Charleston, Kanawha County, West Virginia, in the Southern District of West Virginia, the defendants listed in the chart below knowingly and intentionally distributed, and caused to be distributed, a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance, not for legitimate medical purposes in the usual course of professional medical practice and beyond the bounds of medical practice.

| COUNT | DEFENDANT | CUSTOMER | DATE |
|-------|-----------|----------|------|
| 12 | VERNON STANLEY | D.J.B. | 11/05/2013 |
| 13 | BRIAN GULLETT | D.J.B. | 03/25/2014 |
| 14 | WILLIAM EARLEY | D.J.B. | 04/24/2014 |
| 15 | PAUL BURKE | D.J.B. | 05/20/2014 |
| 16 | ROSWELL TEMPEST LOWRY | D.J.B. | 06/17/2014 |
| 17 | BRIAN GULLETT | D.E.B. | 03/12/2013 |
| 18 | VERNON STANLEY | D.E.B. | 07/01/2013 |
| 19 | MARK CLARKSON | D.E.B. | 09/23/2013 |
| 20 | WILLIAM EARLEY | D.E.B. | 11/18/2013 |
| 21 | PAUL BURKE | D.E.B. | 08/25/2014 |
| 22 | BRIAN GULLETT | W.P. | 06/20/2013 |
| 23 | VERNON STANLEY | W.P. | 10/10/2013 |
| 24 | WILLIAM EARLEY | W.P. | 02/27/2014 |

| COUNT | DEFENDANT | CUSTOMER | DATE |
|---|---|---|---|
| 25 | ROSWELL TEMPEST LOWRY | W.P. | 05/22/2014 |
| 26 | PAUL BURKE | W.P. | 06/19/2014 |
| 27 | BRIAN GULLETT | O.R. | 03/31/2014 |
| 28 | BRIAN GULLETT | S.W. | 04/09/2013 |
| 29 | VERNON STANLEY | S.W. | 05/07/2013 |
| 30 | MARK CLARKSON | S.W. | 09/24/2013 |
| 31 | ROSWELL TEMPEST LOWRY | S.W. | 06/30/2014 |
| 32 | WILLIAM EARLEY | S.W. | 07/28/2014 |
| 33 | PAUL BURKE | S.W. | 08/25/2014 |

All in violation of Title 21, United States Code, Section 841(a)(1).

## COUNT THIRTY-FOUR
**(Distribution of Oxycodone and Methadone Causing Death)**

On or about May 14, 2013, at or near Beckley, Raleigh County, West Virginia, and within the Southern District of West Virginia, defendant SANJAY MEHTA, D.O., knowingly and intentionally distributed, and caused to be distributed, a quantity of oxycodone and methadone, both Schedule II controlled substances, not for legitimate medical purposes in the usual course of professional medical practice and beyond the bounds of medical practice, which distribution resulted in the death of customer T.P.G. from the subsequent use of the prescribed oxycodone and methadone.

In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

28

## COUNT THIRTY-FIVE
### (Distribution of Oxycodone Causing Death)

On or about July 29, 2013, at or near Beaver, Raleigh County, West Virginia, and within the Southern District of West Virginia, defendant SANJAY MEHTA, D.O., knowingly and intentionally distributed, and caused to be distributed, a quantity of oxycodone, a Schedule II controlled substance, not for legitimate medical purposes in the usual course of professional medical practice and beyond the bounds of medical practice, which distribution resulted in the death of customer J.B. from the subsequent use of the prescribed oxycodone.

In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

## COUNT THIRTY-SIX
### (Distribution of Oxycodone)

On or about January 30, 2014, at or near Beaver, Raleigh County, West Virginia, and within the Southern District of West Virginia, defendant SANJAY MEHTA, D.O., aided, abetted, counseled, commanded, induced and procured by defendant JOSHUA RADCLIFFE, knowingly and intentionally distributed, and caused to be distributed, a quantity of oxycodone, also known as Endocet, a Schedule II controlled substance, to customer M.H. not for legitimate medical purposes in the usual course of professional medical practice and beyond the bounds of medical.

In violation of Title 21, United States Code, Section 841(a)(1).

## COUNT THIRTY-SEVEN
### (Money Laundering Conspiracy)

1.    Paragraphs 1 through 41 of Count One are incorporated herein by reference.

2.    From on or about November 2010, through June 2015, in or near Beaver and Beckley, Raleigh County, and Charleston, Kanawha County, West Virginia, in the Southern District of West Virginia and elsewhere, defendants JAMES H. BLUME, JR., D.O., MARK T. RADCLIFFE, MICHAEL T. MORAN, M.D., SANJAY MEHTA, D.O., BRIAN GULLETT, D.O., VERNON STANLEY, M.D., MARK CLARKSON, D.O., WILLIAM EARLEY, D.O., PAUL W. BURKE, JR., M.D., and ROSWELL TEMPEST LOWRY, M.D., and others known and unknown to the Grand Jury, did knowingly conspire with each other to commit offenses in violation of 18 U.S.C. § 1956(a)(1)(A)(i), that is knowingly to conduct and attempt to conduct financial transactions affecting interstate commerce, which transactions involved the proceeds of specified unlawful activities, with the intent to promote the carrying on of the specified unlawful activities, while knowing the property involved in the financial transactions represented the proceeds of some form of unlawful activity.

3.    The specified unlawful activities included the knowing and intentional distribution, and causing the distribution, of Schedule II controlled substances, including a mixture or substance containing a detectable amount of oxycodone, not for

legitimate medical purposes in the usual course of professional medical practice and beyond the bounds of medical practice, in violation of 21 U.S.C. § 841(a)(1), and conspiracy to commit that offense, in violation of 21 U.S.C. § 846.

4.   The defendants intended to promote the carrying on of the specified unlawful activities through the payment and receipt of bonuses to practitioners and PPPFD employees, which encouraged defendant practitioners to continue to prescribe Schedule II prescription pain medications to customers who otherwise showed signs of abuse or diversion, at times in direct contravention of HOPE Clinic's and PPPFD's policies; to keep customers returning to the HOPE Clinic by prescribing Schedule II controlled substances; and to move as many customers as possible through HOPE Clinic each day without providing legitimate medical care

In violation of Title 18, United States Code, Section 1956(h).

## NOTICE OF FORFEITURE

1.     The allegations contained in Counts One through Thirty-Six of this Third Superseding Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 21 U.S.C. § 853 and 18 U.S.C. § 982(a).

2.     In accordance with 21 U.S.C. § 853(a) and Rule 32.2(a) of the Federal Rules of Criminal Procedure, and premised upon the conviction of the defendants JAMES H. BLUME, JR., D.O., MARK T. RADCLIFFE, JOSHUA RADCLIFFE, MICHAEL T. MORAN, M.D., SANJAY MEHTA, D.O., BRIAN GULLETT, D.O., VERNON STANLEY, M.D., MARK CLARKSON, D.O., WILLIAM EARLEY, D.O., PAUL W. BURKE, JR., M.D., and ROSWELL TEMPEST LOWRY, M.D., of a violation of 21 U.S.C. §§ 801 et seq., the defendants shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offenses and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the offenses. The property to be forfeited includes, but is not limited to, the following:

A.     A money judgment in the amount of $248,195 which amount represents the gross proceeds involved in or traceable to property involved in the offenses set forth in Counts One through Thirty-Six of this Third Superseding Indictment; and

33

B.   Real property located at 213 Pinewood Drive, SUR LOT 45 4.10 AC & 0.51 AC Pinewood SD, Pinewood Drive, Shady Spring, West Virginia 25918.

3.   In accordance with 18 U.S.C. § 982(a) and Rule 32.2(a) of the Federal Rules of Criminal Procedure, and premised upon the conviction of defendants JAMES H. BLUME, JR., D.O., MARK T. RADCLIFFE, MICHAEL T. MORAN, M.D., SANJAY MEHTA, D.O., BRIAN GULLETT, D.O., VERNON STANLEY, M.D., MARK CLARKSON, D.O., WILLIAM EARLEY, D.O., PAUL W. BURKE, JR., M.D., and ROSWELL TEMPEST LOWRY, M.D., of a violation of Title 18, United States Code, Section 1956(h), as set forth in Count Thirty-Seven of this Third Superseding Indictment, the defendants shall forfeit to the United States any property, real or personal, involved in the said offense, and any property traceable to property involved in the offense, including but not limited to the following:

The United States will seek forfeiture as to each defendant listed in the table below for the amount listed in the table, as that sum in aggregate constitutes the gross proceeds derived by the defendants from the conspiracy during the period alleged in Count Thirty-Seven:

| Defendant | Amount |
|---|---|
| JAMES H. BLUME, JR. | $3,219,394.64 |
| MARK RADCLIFFE | $3,219,394.64 |
| MICHAEL T. MORAN | $61,458.90 |
| SANJAY R. MEHTA | $696,906.57 |
| BRIAN C. GULLETT | $113,445.28 |
| VERNON STANLEY | $223,158.72 |

| MARK CLARKSON | $237.850.31 |
| WILLIAM EARLEY | $70,018.45 |
| ROSWELL TEMPEST LOWRY | $21,445.35 |
| PAUL BURKE | $41,701.09 |

4.   If any of the property described above, as a result of any act or omission of the defendants:

    a.   cannot be located upon the exercise of due diligence;

    b.   has been transferred or sold to, or deposited with, a third party;

    c.   has been placed beyond the jurisdiction of the court;

    d.   has been substantially diminished in value; or

    e.   has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

MICHAEL B. STUART
United States Attorney

By: _____
MONICA D. COLEMAN
Assistant United States Attorney

_____
STEVEN I. LOEW
Assistant United States Attorney