IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY

UNITED STATES OF AMERICA

v.                                              CRIMINAL NO. 5:18-cr-00026

JAMES H. BLUME, JR.
MARK T. RADCLIFFE
JOSHUA RADCLIFFE
MICHAEL T. MORAN
SANJAY MEHTA
BRIAN GULLETT
VERNON STANLEY
MARK CLARKSON
WILLIAM EARLEY
PAUL W. BURKE
ROSWELL TEMPEST LOWRY

**UNITED STATES' MOTION *IN LIMINE* TO ADMIT
EVIDENCE OF UNCHARGED DEATHS**

The United States of America, by and through Monica D. Coleman, Steven I. Loew, and Jason S. Bailey, Assistant United States Attorneys for the Southern District of West Virginia, hereby files this motion *in limine* to admit evidence relating to uncharged deaths of patients at the HOPE Clinics. The United States requests that the Court find that this evidence of uncharged deaths is relevant and probative to the defendants' requisite knowledge that prescriptions issued by the various physicians were being misused by patients, and hence were issued not for a legitimate medical purpose and outside the scope of professional practice.

Further, the United States intends to offer this evidence to defeat anticipated defenses and any claim of good faith by the defendants. That said, the United States has no intention of spending an inordinate amount of time delving into the details of those deaths in its case-in-chief, and,

indeed, will not offer specific evidence of any of those deaths in its case-in-chief.

Additionally, the United States specifically reserves the right to introduce evidence of individual overdoses if testimony is elicited on cross examination of the governments' witnesses and/or if the defense calls witnesses in their respective cases who assert that prescriptions issued by clinic providers were for a legitimate medical purpose or that a defendant acted in good faith during their employment with the clinic.

The fact that numerous people died while patients at the HOPE Clinic will be discussed by multiple witnesses as a part of their overall testimony, and is relevant to the status of the HOPE Clinics as "pill mills." Furthermore, clinic staff were made aware of many of the deaths as evidenced by clinic paperwork containing notations from family members notifying the clinic of the death, obituaries, a medical examiner inquiry, and numerous patient files being marked as "deceased" or "dead." The status of these clinics as pill mills strikes at the heart of this case and, therefore, is of the highest possible relevance.

For example, the government intends to call Special Agent Scott Cruickshank, the lead investigator of the HOPE Clinic, who it is expected to testify that he discovered as a part of his investigation that over 27 people died while patients at the HOPE Clinic between January 1, 2010 and April 2014. Other witnesses will competently testify that numerous people died while patients at the HOPE Clinic pill mills. Those deaths help direct the investigative decisions in this case and help explain other investigative actions. It would be awkward and illogical to ask the investigators who will testify in this case to tip-toe around the fact that lots of people died at the clinics as they explain their investigative activities to the jury.

That said, unless the defense opens the door, the United States will not attempt to prove

that any individual death was the result of an overdose from a prescription.[1] However, the fact that over 27 people died while patients at HOPE Clinics is relevant and probative of the clinics' statuses as pill mills. A general inference is enough to establish high relevance.

As noted above, a noticeable number of the patient charts bear the notation "deceased" or "dead," establishing conclusively that clinic personnel knew that their patients were dying. People do not die of back pain. Additionally, a number of patients were listed on a chart maintained by clinic management as "discharged" and the reason for discharge was listed as "deceased." Whether an individual defendant personally knew about these deaths is unimportant. While certainly direct or constructive knowledge of the deaths would be highly probative of their decisions to continue to involve themselves with pill mills, the relevance of the deaths extends far beyond the defendants' personal knowledge. The United States will establish through any number of indicia that the pain clinics were, in fact, pill mills, and that any sensible person associated with the clinics (who did not deliberately choose to remain ignorant) would have known that the HOPE Clinics were pill mills.

While defendants are hard-pressed to oppose the relevancy of this information, their likely opposition will rest on Federal Rule of Evidence 403.[2] However, because the evidence is so highly relevant and probative of elements intrinsic to the charged counts, it is quintessentially the sort of evidence that Rule 403 was meant to keep in as not unfairly prejudicial. As such, both sides are

---

[1] The deaths included in the indictment are exempted from this assertion.

[2] Evidence of a patient's death is admissible in a pill mill case as intrinsic evidence to the charged offense. As such, Rule 404(b) is not implicated because intrinsic evidence of the patient deaths shows a continuing pattern of illegal activity and is "inextricably intertwined" with the indicated crimes. *See United States v. Chin*, 83 F.3d 83, 87–88 (4th Cir. 1996). To be admissible, though, intrinsic evidence must still satisfy the balancing requirement of Rule 403. *Id.* at 88.

free to urge the jury to attribute varying degrees of weight to this particular type of evidence, from none at all to a substantial amount. In the end, it is just another piece of evidence.

In applying Fed. R. Evid. 403, other circuits have found relevant and admissible evidence of uncharged deaths. *See, e.g.*, *United States v. Gowder*, No. 6:17-CR-25-REW-HAI, 2019 WL 112307, at *6 (E.D. Ky. Jan. 2, 2019) (allowing evidence regarding deceased patients not charged in the indictment in prosecution for conspiracy to operate a pill mill). In *United States v. Schwartz*, 702 F. App'x 748, 755-56 (10th Cir. 2017), the Court held evidence of uncharged deaths admissible as intrinsic evidence. In response to a challenge under Fed. R. Evid. 403, the court held "Evidence of patient deaths was probative of the conspirators' wanton disregard for the drug-abusive tendencies of its patients. It showed that Schwartz knew that the clinic's patients were misusing their prescriptions, yet the practice continued to prescribe opioids in irresponsible ways." *Id*. The court also noted that limiting instructions given by the trial court before and after trial alleviated any prejudicial effect. *Id*. Similarly, the Court in *United States v. Bourlier*, 518 F. App'x 848 (11th Cir. 2013), held that the evidence of uncharged deaths was "inextricably intertwined with the offenses charged." *Id*. at 855-56. There, the Court held that amongst several relevant reasons, the evidence of uncharged deaths "could be considered by the jury when determining whether [the provider] knew that his patients were misusing the prescriptions…this is one factor that may suggest that [the provider] distributed controlled substances without a legitimate medical purpose and outside the usual course of professional practice." *Id*.

The Sixth Circuit has considered the issue in the context of impeaching a witness. In *United States v. Lang*, 717 F. App'x. 523 (6th Cir. 2017), the Court held that defense witnesses called to testify in regard to the legitimate prescribing practices of a defendant would be impeached with

4

"good faith questions about whether [the provider] knew that her patient had died from an overdose…" *Id*., at 539.

The Fourth Circuit has not addressed this issue directly. *See United States v. Kumar*, No. 4:17-CR-5-FL-1, 2019 WL 346395, at *8–9 (E.D.N.C. Jan. 28, 2019) (citing *Schwartz* and *Bourlier* in allowing evidence of uncharged patient deaths "if the government can introduce it in a manner that is not overly prejudicial"). This Court has faced a previous situation wherein it found that evidence of patient deaths was "potentially relevant" and could be used to "rebut a 'good faith' defense and to show knowledge that the prescriptions were outside the standards of medical practice." *See United States v. Kostenko*, No. 5:16-cr-00221, 2017 WL 1395500, at *2 (S.D. W. Va. Apr. 17, 2017). However, the Court granted the defendant's motion *in limine* to exclude the evidence under Rule 403 because that same defendant was charged with causing the death of certain patients, and evidence of other, uncharged overdose deaths "ha[d] the potential to be both unfairly prejudicial and confusing to the jury." *Id.* (citing *United States v. Tran Trong Cuong*, 18 F.3d 1132, 1141 (4th Cir. 1994)). Notably, the defendant in that case was not charged with a conspiracy to distribute controlled substances. *See id.* at *1.

Here, the Court is faced with a different scenario, and the evidence should be allowed. Unlike in *Kostenko*, eleven defendants here were charged in the Third Superseding Indictment as being involved in a vast conspiracy to distribute controlled substances without a legitimate medical purpose and outside the usual course of professional practice. Additionally, three defendants were charged with maintaining drug-involved premises. The fact that clinic staff were aware that their patients were dying but did not alter policies or practices in any way is directly probative of these two types of charges. Further, and of equal importance, the evidence will be used to rebut any

5

defense of good faith.

It is well settled that to prove a drug conspiracy in violation of 21 U.S.C. § 846, "the government [is] required to establish beyond a reasonable doubt that: (1) an agreement to distribute and possess [the controlled substance] with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy." *United States v. Hackley*, 662 F.3d 671, 678–79 (4th Cir. 2011) (quoting *United States v. Yearwood,* 518 F.3d 220, 225–26 (4th Cir.2008); *United States v. Burgos,* 94 F.3d 849, 857 (4th Cir.1996) (en banc)) (internal quotation marks omitted). "The presence of a knowing and voluntary agreement distinguishes conspiracy from the completed crime and is therefore an essential element of the crime of conspiracy." *Id.* at 679. Again, evidence of both charged and uncharged overdoses of which clinic staff and/or these providers had notice is probative and relevant as to their knowledge and intent in joining the drug conspiracies alleged in the indictment. As noted above, the defendant in *Kostenko* was not charged with a conspiracy, *see* 2017 WL 1395500, at *1, but the defendants in *Kumar*, *Gowder*, *Schwartz*—cases in which courts admitted evidence of uncharged patient deaths—were charged with conspiracies, *see* 702 F. App'x at 752; 2019 WL 346395, at *1; 2019 WL 112307, at *1, and these cases are more akin to the situation currently before the Court.

In the alternative, a proper limiting instruction would cure any perceived undue prejudice to the defendants. However, evidence of uncharged deaths are relevant and probative to this trial, especially in light of the anticipated defenses. Therefore, the Court should allow the jury to hear this evidence as it is intrinsic to the charges in the Third Superseding Indictment. *See id.*; *see also Chin*, 83 F.3d at 87–88.

6

For these reasons, the United States respectfully requests that the Court enter an order allowing the introduction into evidence of uncharged patient deaths.

        Respectfully submitted,

        MICHAEL B. STUART
        United States Attorney

By:    s/Monica D. Coleman
        Assistant United States Attorney
        WV State Bar Number 8536
        Attorney for United States
        P.O. Box 1713
        Charleston, WV 25326
        Phone: 304-345-2200
        Fax: 304-347-5104
        E-mail: monica.coleman@usdoj.gov

        s/Steven I. Loew
        STEVEN I. LOEW
        Assistant United States Attorney
        WV State Bar No. 7412
        300 Virginia Street, East
        Room 4000
        Charleston, WV 25301
        Telephone: 304-345-2200
        Fax: 304-347-5104
        E-mail: steven.loew2@usdoj.gov

        s/Jason S. Bailey
        Assistant United States Attorney
        Attorney for United States
        P.O. Box 1713
        Charleston, WV 25326
        Phone: 304-345-2200
        Fax: 304-347-5104
        E-mail: jason.bailey2@usdoj.gov

CERTIFICATE OF SERVICE

It is hereby certified that the foregoing "UNITED STATES MOTION *IN LIMINE* TO ADMIT EVIDENCE OF UNCHARGED DEATHS" has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing this 15th day of October, 2019 to:

>Michael O. Callaghan
>Charles Whittaker Neely
>Neely and Callaghan
>159 Summers Street
>Charleston, WV 25301-2134
>Email: mcallaghan@neelycallaghan.com
>>*Counsel for James H. Blume, Jr.*
>
>Derrick W. Lefler
>Derrick W. Lefler, Attorney at Law
>1607 Honaker Avenue
>Princeton, WV 24740
>Email: dlef@citlink.net
>>*Counsel for Mark T. Radcliffe*
>
>Michael R. Whitt
>The Law Office of Michael R. Whitt
>Suite 107
>810 North Jefferson Street
>Lewisburg, WV 24901
>Email: michaelrwhitt@earthlink.net
>>*Counsel for Joshua Radcliffe*
>
>John H. Tinney, Jr.
>Hendrickson & Long PLLC
>214 Capitol Street
>Charleston, WV 25301
>Email: JTinney@handl.com
>>*Counsel for Michael T. Moran, M.D.*

John A. Carr
179 Summers Street
Suite 209
Charleston, WV 25301
Email: jcarr@jcarr@jcarrlaw.com
    *Counsel for Sanjay Mehta, D.O.*

Harry A. Smith, III
Jory & Smith
P. O. Box 1909
Elkins, WV 26241
Email: hasmith@jorysmith.com
    *Counsel for Brian Gullett, D.O.*

Ronald W. Chapman, II
Chapman Law Group
1441 West Long Lake Road
Suite 310
Troy, MI 48098
    *Counsel for Vernon Stanley, M.D.*

Elgine H. McCardle
McCardle Law Office
2139 Market Street
Wheeling, WV 26003
    *Counsel for Vernon Stanley, M.D.*

Jonathan Meltz
1001 Brickell Bay Drive
Suite 1716
Miami, FL 33131
    *Counsel for Vernon Stanley, M.D.*

Thomas W. Smith
P. O. Box 25339
Charleston, WV 25339
Email: tomsmithwv@gmail.com
    *Counsel for Mark Clarkson, D.O.*

9

Isaac Ralston Forman
HISSAM FORMAN DOVOVAN RITCHIE
P O Box 3983
Charleston, WV 25339
Email: iforman@hfdrlaw.com
    *Counsel for William Earley, D.O.*

Michael B. Hissam
HISSAM FORMAN DOVOVAN RITCHIE
P O Box 3983
Charleston, WV 25339
Email: mhissam@hfdrlaw.com
    *Counsel for William Earley, D.O.*

George J. Cosenza
P. O. Box 4
Parkersburg, WV 26102-0004
Email: cosenza@wvdsl.net
    *Counsel for Paul W. Burke, M.D.*

Brian D. Yost
HOLROYD & YOST
209 W. Washington Street
Charleston, WV 25301
Email: byost@wvlaborlaw.com
    *Counsel for Roswell Tempest Lowry, M.D.*

                                                      s/Monica D. Coleman
                                                      Assistant United States Attorney
                                                      WV State Bar Number 8536
                                                      Attorney for United States
                                                      P.O. Box 1713
                                                      Charleston, WV 25326
                                                      Phone: 304-345-2200
                                                      Fax: 304-347-5104
                                                      E-mail: monica.coleman@usdoj.gov

s/Steven I. Loew
STEVEN I. LOEW
Assistant United States Attorney
WV State Bar No. 7412
300 Virginia Street, East
Room 4000
Charleston, WV 25301
Telephone: 304-345-2200
Fax: 304-347-5104
E-mail: steven.loew2@usdoj.gov


s/Jason S. Bailey
Assistant United States Attorney
Attorney for United States
P.O. Box 1713
Charleston, WV  25326
Phone: 304-345-2200
Fax: 304-347-5104
E-mail: jason.bailey2@usdoj.gov

11