**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT BECKLEY**

UNITED STATES OF AMERICA

v.                                                    CRIMINAL ACTION NO. 5:18-cr-00026

JAMES H. BLUME, JR. -01
MARK CLARKSON -08

**MEMORANDUM OPINION AND ORDER**

Pending is Defendant Mark Clarkson's Motion to Suppress Certain Items from the Search of the Wytheville, Virginia HOPE Clinic, filed August 13, 2022. [Doc. 1044]. Dr. Clarkson also filed a memorandum in support that same day. [Doc. 1035]. The United States filed its response in opposition on August 19, 2022. [Doc. 1112]. Defendant James Blume joined in Dr. Clarkson's Motion to Suppress on August 24, 2022. [Doc. 1168]. The Court convened for a suppression hearing on August 26, 2022. [Doc. 1206]. The matter is ready for adjudication.

**I.**

In March 2015, special agents with the Department of Health and Human Services, Office of Inspector General, the Drug Enforcement Administration, and the Federal Bureau of Investigation executed federal search warrants at the HOPE Clinic's Beaver and Wytheville locations. The search warrants were the result of an ongoing investigation into the unlawful distribution of controlled substances and health care fraud at the HOPE Clinics and affiliated pharmacies. The search warrant for the Wytheville location was issued by Magistrate Judge Pamela Meade Sargent in the United States District Court for the Western District of Virginia.

Dr. Clarkson moves to suppress all items seized during the execution of the search

warrant for HOPE Clinic's Wytheville location, except for patient files transferred to that Clinic from the Charleston or Beaver clinic. [Doc. 1044]. Dr. Clarkson alleges that "the affidavit in support of the application for the search warrant does not set out with any particularity or specificity sufficient facts to support a finding of probable cause to issue the search warrant for any items other than the patient records allegedly transferred." [*Id.* at 1]. Specifically, Dr. Clarkson alleges that a "review of the witness information referenced purporting to provide probable cause reveals precious little reference to the Wytheville Clinic." [*Id.*]. Dr. Clarkson also appears to argue that the scant evidence applicable to Wytheville in the affidavit is stale. [*See, e.g.*, *id.* at 2 ("Witness B . . . left employment with Trivillian's . . . some 23 months prior to the application of the search warrant); *id.* ("Witness E['s] . . . statement . . . occurred some 18 months prior to the application" of the search warrant.)]. He further asserts that the "affidavit in this case simply fails to set forth any facts, much less sufficient facts, to support a finding of probable cause that patient files at the Wytheville clinic other than the transferred files contained evidence of a crime." [*Id.* at 4].

The United States opposes Dr. Clarkson's Motion to Suppress. [Doc. 1112]. In its response in opposition, the United States makes three arguments: (1) Dr. Clarkson does not have standing to challenge the search warrant because he did not have a legitimate expectation of privacy; (2) there was sufficient probable cause to support the issuance of the search warrant; and (3) even if probable cause was lacking, the officers who executed the search warrant acted in good faith in reliance on the warrant and the evidence should not be suppressed. [*See id.*].

When the Court convened for the suppression hearing, defense counsel for Dr. Clarkson supplied the Court with a written stipulation of certain agreed upon facts, which has since been docketed. [Doc. 1200]. Pursuant to that stipulation, the parties agree to the following:

1. James H. Blume, D.O., and Mark Clarkson, D.O., are defendants in Criminal No. 5:18-cr-0026;

2. On March 19, 2015, James H. Blume, D.O., was the owner of the Wytheville, Virginia Hope Clinic;

3. On March 19, 2015, Mark Clarkson, D.O., was an independent contractor for Hope Clinic, PLLC;

4. On March 19, 2015, Mark Clarkson, D.O., worked in the capacity as supervising physician at Hope Wytheville;

5. On March 19, 2015, Mark Clarkson had personal items at the Hope Clinic, Wytheville.

[*Id.* at 1]. The Court accepts these facts as true when making its determination.

## II.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. To search a premises, officers must generally obtain a warrant supported by probable cause. *See Fernandez v. California*, 571 U.S. 292, 298 (2014); U.S. Const. amend. IV ("[N]o Warrants shall issue, but upon probable cause . . . ."). Whether probable cause for a search exists is a "practical, common-sense" question, asking whether, under a totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

### A.    *Reviewing the Determination of Probable Cause to Search*

"When reviewing a magistrate judge's probable cause determination, we look to whether there was 'a substantial basis for the decision.'" *United States v. Hurwitz*, 459 F.3d 463, 473 (4th Cir. 2006) (quoting *United States v. Lalor*, 996 F.2d 1578, 1581 (4th Cir. 1993)); *see United States v. Blackwood,* 913 F.2d 139, 142 (4th Cir. 1990) (Once a search warrant has been issued, a review of the probable cause determination made by the judicial officer is to be shown

"great deference."); *see also United States v. Blakeney*, 949 F.3d 851, 859 (4th Cir. 2020); *United States v. Drummond*, 925 F.3d 681, 687 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 976 (2020); *United States v. Williams*, 974 F.2d 480, 482 (4th Cir. 1992) (reversing suppression of evidence seized pursuant to search warrant, faulting district court for not giving proper deference to magistrate judge's probable cause determination). "[T]he task of a reviewing court is not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984); *see also United States v. Bosyk*, 933 F.3d 319, 325 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 1124 (2020); *Drummond*, 925 F.3d at 687. "When reviewing the probable cause supporting a warrant, a reviewing court must consider only the information presented to the magistrate who issued the warrant." *United States v. Wilhelm*, 80 F.3d 116, 118 (4th Cir. 1996).

Additionally, "time is a crucial element of probable cause. A valid search warrant may issue only upon allegations of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *United States v. McCall*, 740 F.2d 1331, 1335–36 (4th Cir. 1984) (citation and quotations omitted). However, "[t]he vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit . . . . Rather, we must look to all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized." *Id*. at 1336 (citation omitted); *see United States v. Bosyk*, 933 F.3d 319, 330–32 (4th Cir. 2019).

**B.      *The Good Faith Exception to the Exclusionary Rule***

Fruits of search warrants not supported by probable cause are not automatically suppressed. "Under the good faith exception to the warrant requirement, evidence obtained from

an invalidated search warrant will be suppressed only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Lalor*, 996 F.2d at 1583; *see also United States v. Fall*, 955 F.3d 363, 370–72 (4th Cir.) (whether evidence was properly admitted under private search doctrine, and despite factual error in affidavit, evidence properly admitted pursuant to good faith exception), *cert denied*, 141 S. Ct. 310 (2020); *United States v. Bynum*, 293 F.3d 192, 197–99 (4th Cir. 2002) (applying good faith exception where "affidavit contained sufficient indicia of probable cause so as not to render reliance on it totally unreasonable," reversing district court's suppression of evidence). Put another way, the good faith exception applies unless "a reasonably well-trained officer . . . [should] have known that the search was illegal despite the magistrate's authorization." *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984); *see Illinois v. Krull*, 480 U.S. 340, 355 (1987); *United States v. DeQuasie*, 373 F.3d 509, 519–20 (4th Cir. 2004).

The Supreme Court has noted "four situations in which an officer's reliance on a search warrant would not be reasonable," that is, where the "good faith exception" would not apply:

> (1) the magistrate was misled by information in an affidavit that the officer knew was false or would have known was false except for the officer's reckless disregard of the truth;
>
> (2) the magistrate wholly abandoned his detached and neutral judicial role;
>
> (3) the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and
>
> (4) the warrant was so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid.

*United States v. Hyppolite*, 65 F.3d 1151, 1156 (4th Cir. 1995); *see United States v. Wellman*, 663 F.3d 224, 228–29 (4th Cir. 2011) (restating four circumstances in which good faith exception

does not apply), *cert. denied*, 566 U.S. 953 (2012).


## III.

### A.      *Probable Cause to Search*

There is substantial evidence in the record supporting the magistrate's decision to issue the search warrant for the Wytheville HOPE Clinic location.

Our Court of Appeals has considered a very similar scenario to that presented here. In *United States v. Hurwitz*, it affirmed the district court's denial of a suppression motion because there was probable cause to believe the doctor/defendant's practice was "permeated with the distribution of illegal drugs." 459 F.3d at 473–74. The Court of Appeals explained that such probable cause could be "explicitly stated in the supporting affidavit or implicit from the evidence therein set forth." *Id.* at 473. The decision further articulated that "[t]here is no requirement that the government have evidence relating to each and every patient . . . to support the seizure of all of the files." *Id.* at 473. There was deemed to be ample evidence that the defendant/doctor's "common practice gave reason to believe that he 'consistently departed from accepted professional standards' and 'was not practicing medicine, but was instead cloaking drug deals under the guise of a professional medical practice.'" *Id.* at 474 (quoting *United States v. Alerre*, 430 F.3d 681, 691 (4th Cir. 2005)).

The subject search warrant and affidavit contained, *inter alia*, evidence that patients diverted medications and still received prescriptions, that there was a large increase in Trivillian's dispensing of controlled substances due to HOPE Clinic patients, that HOPE Clinic patients travelled long distances to Trivillian's to have their prescriptions from HOPE Clinic filled, that HOPE Clinic was a predominately cash-based business, and that the Board of Pharmacy believed

that physicians at HOPE Clinic should be investigated due to a link in their prescribing with overdose deaths. This evidence alone was more than enough for Magistrate Judge Sargent to find probable cause and supported the allegation that HOPE Clinic locations -- including Wytheville -- were permeated with the distribution of illegal drugs and that doctors at the Clinic locations were cloaking drug deals under the guise of medical practice.

Further, as to Dr. Clarkson's arguments regarding staleness, the Court must look at all of the facts and circumstances of the case, including the length of time this purported illegal activity was occurring and the nature of the property to be seized. While some of the witnesses' testimony in the affidavit occurred over a year before the application for the search warrant, the facts alleged in the affidavit were clearly of activities that had been going on for many years. Further, the information sought to be seized -- patient records -- would not change in nature as time elapses. A gap in time between the witness testimony and the application for a search warrant is thus less concerning than it might be in other cases. Under the totality of the circumstances, the Court concludes that the allegations were sufficiently proximate to issuance as to justify Magistrate Judge Sargent's finding of probable cause.

**B.      *Good Faith***

Moreover, assuming the search warrant was not supported by probable cause, the fruits of the search should not be excluded; the officers acted in good faith and none of the four *Leon* exceptions apply.

The executing agents reasonably relied upon the warrant issued by Magistrate Judge Sargent. There is no allegation that the officers provided false or misleading information to the Magistrate Judge or that she wholly abandoned her judicial role. Further, the affidavit is not lacking in indicia of probable cause; it lays out a broad set of facts regarding an overarching

conspiracy of illegal drug distribution from the HOPE Clinic locations, including Wytheville.

Finally, there is no allegation that the warrant was facially deficient as to render it invalid.

Searches conducted "pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Leon*, 468 U.S. at 922 (internal quotation marks omitted). That is the case here.

## IV.

For the foregoing reasons, the Court **DENIES** the Motion to Suppress [Docs. 1044, 1068].

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record.

ENTER:        August 29, 2022

Frank W. Volk
United States District Judge