UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

UNITED STATES OF AMERICA

v.                                                             CRIMINAL ACTION NO. 5:18-cr-00026

JAMES H. BLUME, JR. -01,
MARK T. RADCLIFFE -02,
MICHAEL T. MORAN -04

### MEMORANDUM OPINION AND ORDER

Pending are Defendant Mark Radcliffe's Motion to Continue [Doc. 1277] and James Blume's Motion to Continue Trial to Secure Attendance of Witness [Doc. 1282], each filed on September 8, 2022. Defendant Michael Moran has joined in the Motions. [Doc. 1286]. The United States responded on September 8 and September 9, 2022. [Docs. 1279, 1287]. Defendants replied on September 10, 2022. [Docs. 1289, 1290]. The matter is ready for adjudication.

I.

Trial was scheduled for September 13, 2022. On September 7, 2022, the Court committed Defendant Sanjay Mehta "to the custody of the Attorney General for placement in a suitable facility for such a reasonable time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." [Doc. 1275 at 2]. The Court has learned that Defendant Mehta is on the waiting list for evaluation at FMC Butner. Whether Dr. Mehta is transported by the Marshal or directed to self-report, the given date from the Bureau of Prisons is April 25, 2023, after which Dr. Mehta would have to undergo examination and a report would have to be prepared.

In view of the lengthy delay this would visit upon the trial schedule, Dr. Mehta's case was severed from that of his co-Defendants. [*Id.*].

Defendant Radcliffe seeks a continuance to allow counsel to adequately prepare an effective defense in the absence of Dr. Mehta. He contends that Dr. Mehta has been a material component of the United States' case from the outset, and that he was likewise expected to play a significant role for Mr. Radcliffe in defense of the conspiracy charges. Mr. Radcliffe depended upon Dr. Mehta "vigorously" defending himself on the stand at trial. [*See* Doc. 1277 at 3–4]. He asserts Dr. Mehta's late-rising absence leaves an unfillable void this close to trial.

Defendant Blume seeks a continuance based upon the following arguments: (1) Dr. Mehta and Dr. Blume planned to testify at trial in joint defense to the charges against them, (2) Dr. Mehta is expected "to offer material exculpatory testimony at trial," (3) the testimony is "highly relevant" and probative on Dr. Blume's purported criminal liability, and (4) Dr. Mehta's incapacity is "not the kind that guarantees he will remain incompetent" and he can "probably be" restored if a continuance is granted. [*See* Doc. 1282].

The United States opposes the motions. In response to Mr. Radcliffe, the United States contends reliance on a co-defendant's counsel to prepare an effective defense at this late stage is not grounds for a continuance. [Doc. 1279 at 1]. In addition, the United States submits that while it still intends to introduce evidence at trial of multiple overdose deaths to prove Defendants' knowledge of those deaths and patients' prescription misuse,[1] it no longer plans to call expert witnesses to prove the "but for" cause of death since those charges related solely to Dr. Mehta. [*Id.*]. In response to Dr. Blume, the United States asserts that (1) a continuance is unnecessary for

---

[1] The issue of uncharged overdose deaths was previously addressed in the United States' motion to admit evidence of those deaths. [Doc. 662]. The Court granted that motion. [Doc. 1262].

2

a just adjudication [*see* Doc. 1287 at 2–4], and (2) Dr. Mehta's absence will benefit his co-Defendants inasmuch as any incriminating evidence and testimony applicable only to Dr. Mehta will not be introduced. [*Id.* at 4].

The Defendants' replies detail the prejudice resulting from Dr. Mehta's unavailability and outline the nature of his expected testimony. Mr. Radcliffe further distinguishes the authorities cited by the United States; Dr. Blume emphasizes the similarities between this matter and *United States v. Adams*, 569 F. App'x 174 (4th Cir. 2014) (per curiam) (unpublished), the case upon which Defendants primarily rely.

## II.

"The party seeking a continuance generally must show that a delay is necessary for a just determination of the case." *United States v. Clinger*, 681 F.2d 221, 223 (4th Cir. 1982) (citing *Neufield v. United States*, 118 F.2d 375, 380 (D.C. Cir. 1941)); *United States v. Colon*, 975 F.2d 128 (4th Cir. 1992). Where, as here, a continuance is sought to secure the attendance of a witness at trial, our Court of Appeals requires the moving party to show "who (the witnesses) are, what their testimony will be, that it will be relevant under the issues in the case and competent, that the witnesses can probably be obtained if the continuance is granted, and that due diligence has been used to obtain their attendance for the trial as set." *Id. See also United States v. Ellis*, 263 F. App'x 286, 289 (4th Cir. 2008) (per curiam) (unpublished).

## III.

Defendants claim they have satisfied their burden under *Clinger*. As noted, they rely upon *Adams*.

3

In *Adams*, the defendant-appellant's husband -- Dr. Barton Joseph Adams -- was indicted for health care fraud related to his operation of a pain management medical practice. Prior to trial, the district court determined Dr. Adams was "suffering from a mental disease or defect rendering him mentally incompetent" to understand the proceedings against him. In June 2011, the district court committed Dr. Adams to the Attorney General's custody for hospitalization "for such a reasonable period of time, *not to exceed four months,* as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." *Id.* at 175 (emphasis in original). In September 2011, Dr. and Mrs. Adams were indicted for concealment of financial proceeds from the underlying health care fraud. *Id.* The district court severed the Defendants' trials to enforce Mrs. Adams's speedy trial rights in light of the earlier competency determination respecting Dr. Adams.

In November 2011, Mrs. Adams moved to continue her trial until Dr. Adams was restored. Although Dr. Adams repeatedly indicated that he wanted to testify at his wife's trial -- and his counsel concluded that "his testimony would exonerate [Mrs. Adams] as it would tend to prove that she had no actual knowledge of the charged transactions" -- the district court denied the continuance. *Id.* Mrs. Adams was subsequently convicted. *Id.* Two months later, the warden for Dr. Adams's facility reported his restoration. *Id.* The district court agreed and accepted his guilty plea. *Id.* at 176.

Our Court of Appeals concluded that Mrs. Adams had satisfied the *Clinger* factors. It concluded that "under the facts and circumstances presented, the district court abused its discretion in denying Mrs. Adams' motion for a continuance." *Id.* at 177. It was undisputed that Mrs. Adams had (1) identified Dr. Adams, (2) demonstrated his testimony would be relevant, and (3) diligently acted to secure his presence at trial. *Id.* The Court of Appeals further concluded that

4

Mrs. Adams "sufficiently demonstrated the nature of her husband's expected testimony in light of the circumstances of the case," noting it was undisputed that Dr. Adams was prepared to provide exculpatory testimony addressing Mrs. Adams's lack of knowledge of her husband's alleged fraud and his alleged concealment of fraud proceeds. *Id.* On the final *Clinger* factor, the Court of Appeals acknowledged that Mrs. Adams could not predict whether Dr. Adams would be restored. *Id.* at 177. Inasmuch as she filed her motion five months after the district court's competency order, however, and that restoration occurred just two months after Mrs. Adams's conviction, the Court of Appeals held that "under the circumstances . . . , it was incumbent on the district court to continue the trial until the court could make an informed finding regarding the present state of Dr. Adams' condition." *Id.* (citing *Clinger*, 681 F.2d at 224 (when a court cannot make a necessary finding with exactness, the court should grant a continuance to receive evidence on that subject)). The Court further concluded that the district court's failure to continue the trial prejudiced Mrs. Adams inasmuch as Dr. Adams's testimony would have been "highly probative" regarding Mrs. Adams's role in the charged offenses. *Id.*

A. *The* **Clinger** *Factors*

The Defendants have satisfied *Clinger*'s identification and due diligence factors; they identify Dr. Mehta and timely moved to obtain his attendance at trial. The Defendants also assert, and the United States acknowledges, that Dr. Mehta's testimony is relevant. The Court agrees and thus finds *Clinger*'s relevance factor is satisfied. Accordingly, at issue are (1) the nature of Dr. Mehta's testimony, and (2) whether Dr. Mehta can probably be obtained if a continuance is granted.

Defendants assert proceeding with trial will prejudice their cases as Dr. Mehta's testimony is exculpatory and highly probative of their respective roles, if any, in the charged offenses. The United States counters Dr. Mehta's testimony is "not nearly as probative" as Dr. Adams's testimony would have been at his wife's trial. The United States cites two cases, *United States v. Ferguson*, 172 F. App'x 539 (4th Cir. 2006) (per curiam) (unpublished) and *United States v. Doreste*, 947 F.2d 942 (4th Cir. 1991) (per curiam) (unpublished). It compares the decision in *Doreste* to the current controversy, asserting Dr. Mehta's testimony that he "acted within legal limits of medical practice" would be "cumulative to every expert witness defendants may call and to defendant Moran's testimony should he choose to testify." [Doc. 1287 at 4].[2]

The charged conspiracy alleges Defendants Blume and Radcliffe agreed with HOPE Clinic physicians to violate 21 U.S.C. § 841. Defendants reply (1) Dr. Mehta worked at HOPE Clinic longer than any other defendant physician, and (2) the United States has thus far focused prominently upon him. Mr. Radcliffe also alleges (1) he had a "greater amount of contact and communication" with Dr. Mehta than any other physician, and (2) the United States would emphasize their interactions to support the conspiracy. He further asserts Dr. Mehta's expected testimony would go "directly to the issue of the legality or illegality of his practice" as well as "the existence, or lack thereof, of any agreement between he and any co-defendant, and the existence, or lack thereof, of a conspiracy." [Doc. 1289 at 3].

Dr. Blume anticipates the United States will focus on his "involvement in, and knowledge of, the daily operation of Hope Clinic which are alleged to be unlawful." [Doc. 1290

---

[2] The cases are distinguishable. Unlike Dr. Mehta, the witness in *Ferguson* was ancillary and testifying on an irrelevant issue. Additionally, the mid-trial continuance request in *Doreste* resulted from attempting to find a missing witness. Dr. Mehta has difficulty traveling and will be in the custody of the Attorney General. It is likewise apparent Dr. Mehta's anticipated testimony is not cumulative.

at 2]. He claims Dr. Mehta's testimony would be highly probative of Dr. Blume's guilt inasmuch as while Dr. Blume owned the HOPE Clinic, Dr. Mehta was at the Clinic "on a day-to-day basis seeing patients and writing prescriptions, not Defendant Blume." [*Id.*]. The United States will thus be expected to make its case against Dr. Blume "through the conduct of Dr. Mehta or others demonstrating that Defendant Blume had the requisite *mens rea* to join a criminal conspiracy." [*Id.*]. Accordingly, Dr. Blume submits that Dr. Mehta's testimony with respect to his interactions, discussions, and directives with or from Dr. Blume is highly probative of Dr. Blume's role, if any, in the charged offenses. In addition, Dr. Blume anticipates Dr. Mehta would testify that every prescription he wrote was for a legitimate medical reason, directly contradicting the United States' assertion that HOPE Clinic was a pill mill and that Dr. Blume would have known as much. [*Id.*].

The United States attempts to distinguish *Adams* citing uncertainty whether Dr. Mehta will be restored and testify. Further, Dr. Mehta has yet to begin his four-month evaluation, while Dr. Adams had been hospitalized for several months at the time of his wife's trial. Neither assertion, if accurate, is sufficient under the circumstances to diminish the analogous force of *Adams*. For example, Defendants contend "the construction of [Dr. Mehta's] defense" and "communications between counsel" point to the "strong probability that he would testify." [Doc. 1289 at 2].

### IV.

Based upon the foregoing analysis, the Court **GRANTS** the Motions to Continue. **[Docs. 1277, 1282, 1286]**. Due to the severance of co-Defendant Mehta, and as previously detailed herein, the Court **FINDS** excludable the time between September 13, 2022, and the date of the hearing contemplated by 18 U.S.C. § 4241(e) in criminal action 5:18-cr-00026-5, pursuant to 18

U.S.C. § 3161(h)(4) as to Defendant Mehta, and 18 U.S.C. § 3161(h)(7) for the remaining Defendants.

The Court **DIRECTS** the Clerk to send a copy of this written opinion and order to the Defendants and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER: October 11, 2022

Frank W. Volk
United States District Judge